# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| SHIRLEY WYMES, | ) | CASE NO.: 5:21-cv-01268 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | |
| KOCH KNIGHT, LLC, | ) | **MEMORANDUM OF OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | (Resolving Docs. 20, 29) |
| | ) | |

This matter comes before the Court on Defendant Koch Knight, LLC's ("Defendant") Motion for Summary Judgment. (Doc. 20). Plaintiff Shirley Wymes ("Plaintiff") filed a Response in Opposition. (Doc. 25). Defendant filed a Reply in support of its Motion. (Doc. 28). Defendant also filed a Motion to Strike Plaintiff's Declaration that was attached to her Response in Opposition. (Doc. 29). Plaintiff did not file a response to Defendant's Motion to Strike.

For the reasons stated below, Defendant's Motion to Strike Plaintiff's Declaration (Doc. 29) is DENIED and Defendant's Motion for Summary Judgment (Doc. 20) is GRANTED.

## I.    FACTS

Plaintiff is an African American female. (Doc. 19-1, p. 18). She was offered a position with Defendant as a Production Operator on July 30, 2018 and started her employment on August 13, 2018 at Defendant's Canton facility. (Doc. 19-1, p. 75; Doc. 20-1, p. 2). Plaintiff earned $14.00 per hour at the time of her hire but later received three separate raises, earning $17.00 per hour at the time of her termination. (Doc. 19-1, p. 76, 78). Timothy Faciana ("Faciana") was the Operations Manager who Plaintiff reported to during her employment. (Doc. 20-1, p. 2).

In August 2019, Plaintiff's co-worker, Pedro Mejia ("Mejia"), started a rumor that Plaintiff was a prostitute. (Doc. 19-1, p. 11; Doc. 20-1, p. 2). Plaintiff reported the rumor to Faciana. (Doc. 19-1, p. 13; Doc. 20-1, p. 2). Plaintiff did not report to Faciana that this rumor had to do with her race, and Plaintiff testified in her deposition that she did not think this rumor had to do with her race. (Doc. 20-1, p. 2; Doc. 19-1, p. 18). Defendant investigated the rumor and ultimately demoted Mejia. (Doc. 20-1, p. 2).

During Defendant's investigation into the rumor incident, multiple employees reported that Plaintiff acted inappropriately on the plant floor. (Doc. 20-2, p. 2). As a result, on September 11, 2019, Defendant's local Human Resources Generalist, Heather Millington, met with Plaintiff to discuss the reports about her behavior and coached Plaintiff on acceptable workplace behavior and how her behavior was being perceived by others. (Doc. 20-4, p. 2; Doc. 19-1, p. 109). Plaintiff was not disciplined at this time. (Doc. 20-4, p. 2).

Shortly thereafter, Human Resources received additional reports from employees stating that Plaintiff was calling other employees "snitch" and "bitch." (Doc. 20-2, p. 2). On October 3, 2019, Krystin Olson, who provided Human Resources support to Defendant, met with Plaintiff to discuss these reports and go over acceptable workplace behavior. (Doc. 20-2, p. 2). Plaintiff denied that she acted inappropriately or called co-workers these names. (Doc 19-1, p. 85).

On June 8, 2020, Plaintiff was sent home after Faciana discovered she was not wearing steel-toed shoes in violation of Defendant's safety policy. (Doc. 20-1, p. 3; Doc. 19-1, p. 90). Soon thereafter, Plaintiff attended a safety training meeting with Defendant's Environmental Health and Safety Coordinator in which the Safety Coordinator reported to Faciana that Plaintiff was nonresponsive when asked a question and she was asked to leave the meeting if she was going to be disrespectful. (Doc. 20-1, p. 3). On June 29, 2020, Faciana gave Plaintiff a Disciplinary Action

Form for three safety violations and suspended her for one day. (Doc. 19-1, p.s 87, 90-91; Doc. 20-1, p. 4). While Plaintiff denies two of the three violations, she does not dispute that she was issued this form and suspended. (Doc. 19-1, 90-91).

In October 2020, Plaintiff and another female co-worker were involved in a verbal confrontation. (Doc. 19-1, p. 24, 29; Doc. 20-1, p. 4). Both Plaintiff and the other employee were sent home for the remainder of the day. (Doc. 20-1, p. 4). The other employee reported to Faciana that Plaintiff "called her a 'bitch', was not working, and threw saddle shrapnel, which are sharp ceramic pieces, at her while she was sweeping the floor." (Doc. 20-1, 4). Plaintiff stated that the other employee called her vulgar names and said she thought Plaintiff acted like a "queen B" but did not identify any racial slurs or other race-related comments. (Doc. 19-1, p. 24; Doc. 20-2, p. 2).

The incident was reported to Human Resources and, during the investigation, another employee, Eric Boyd, was interviewed as he was working nearby and overheard the exchange. (Doc. 20-2, p. 2). Mr. Boyd confirmed that there was an argument and added that Plaintiff often disappeared from her workspace and tried to get out of work. (Doc. 20-2, p. 3). Human Resources reported to Faciana that both Plaintiff and the other female employee behaved unprofessionally. (Doc. 20-2, p. 3). Faciana then discussed with both employees the need to adhere to the "Company's Guiding Principle of Respect." (Doc. 20-1, p. 4).

On February 9, 2021, another employee, Tim Bramlett, reported to Faciana that Plaintiff threw saddle shrapnel on the floor and into the bin and it would then bounce up and hit him in the leg. (Doc. 20-1, p. 4). Mr. Bramlett told Faciana that he did not want to confront Plaintiff because he did not want to deal with her harassing him. (Doc. 20-1, p. 4). At this time, Mr. Bramlett also reported that Plaintiff often left her workspace and did not wear ear plugs, instead she would be

on her phone or listening to music. (Doc. 20-1, p. 4). Faciana then spoke with Plaintiff, and she denied any wrongdoing. (Doc. 20-1, Exhibit F). Faciana also mentioned to Plaintiff that she was the "common denominator with employee confrontations and that her other problem is her refusal to conform to plant rules." (Doc. 20-1, Exhibit F). Faciana then viewed and photographed the workspace in question and saw saddle shrapnel on the floor. (Doc. 20-1, p. 5). Faciana reported the incident to Human Resources. (Doc. 20-1, p. 5).

Faciana found Mr. Bramlett's report to be credible and determined that Plaintiff had violated the "Company's Guiding Principle of Respect." (Doc. 20-1, p. 5). On February 18, 2021, Faciana made the decision to terminate Plaintiff's employment with Defendant as she had been "previously counseled for other safety infractions and disrespectful conduct towards co-workers." (Doc. 20-, p. 5). Plaintiff recalls Ms. Millington from Human Resources telling her that she was being terminated because she was "throwing parts" at Mr. Bramlett and for the verbal altercation with the female employee. (Doc. 19-1, p. 96).

On March 23, 2021, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging the Defendant subjected her to race discrimination and retaliation. On July 1, 2021, Plaintiff filed the instant lawsuit alleging "Race-Based Discrimination (Disparate Impact)", "Race-Based Discrimination (Hostile Work Environment)", and "Retaliation in Violation of Title VII." (Doc. 2).

## II.   LAW AND ANALYSIS

### A.  Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together

> with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *.

This Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–944 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–1480 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts.  *Id.*

### B.  Defendant's Motion to Strike Plaintiff's Declaration

Plaintiff attached her own declaration to her Response in Opposition to Defendant's Motion for Summary Judgment. (Doc. 25-1). Defendant moves to strike certain paragraphs of the

declaration as not being based on personal knowledge, containing legal conclusions or statements of opinion, and contradicting her earlier deposition testimony. (Doc. 29).[1]

Federal Rule of Civil Procedure 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." A party may not create a factual issue by filing an affidavit that contradicts her earlier deposition testimony to oppose a summary judgment motion. *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016). To the extent that any of Plaintiff's statements in the declaration do not abide by Rule 56(c)(4) or contradict her prior deposition testimony, the Court will not rely on it. Defendant's Motion to Strike is DENIED.

### C.  Plaintiff's Race Discrimination-Disparate Impact Claim

In her Complaint, Plaintiff asserts that Defendant's conduct had an adverse and disproportionate impact on Plaintiff because of her race. (Doc. 2, p. 3). In her Response in Opposition to Defendant's Motion for Summary Judgment, Plaintiff states that "[a]fter reviewing Defendant's Motion and the relevant case law, [Plaintiff] is no longing [sic] pursuing her Disparate Impact Claim in Count I of the Complaint and therefore is not briefing that issue herein." (Doc. 25, p. 4).

To establish a prima facie case of disparate impact race discrimination, "a plaintiff must: (1) identify the particular employment practice; (2) show a disparate impact on a protected group; and (3) prove that the employment practice caused the disparity." *Shollenbarger v. Planes Moving & Storage*, 297 F.App'x. 483, 485 (6th Cir. 2008) (internal citations omitted). In her Complaint,

---

[1] For example, in paragraph 3 of her declaration, Plaintiff states that the rumor Mr. Mejia started "was motivated by his racial animus toward me." (Doc. 25-1). However, in her earlier deposition, when asked "Is it your contention that the rumor had to do with your race?" Plaintiff responded "No." (Doc. 19-1, p. 18).

Plaintiff fails to point to a specific employment practice that results in any disparate impact on a protected group. Instead, Plaintiff refers generally to "Defendant's conduct" and only focuses on alleged adverse impact to herself, not the protected group. (Doc. 2, p. 3).  As such, Plaintiff is not able to meet the elements of a disparate impact claim as a matter of law. Accordingly, Defendant's Motion for Summary Judgment on this claim is GRANTED.

### D.  Plaintiff's Hostile Work Environment Claim

To establish a hostile work environment claim under Title VII an employee must show that "(1) she was a member of a protected group, (2) she was subjected to unwelcome harassment, (3) the harassment was  based upon the employee's protected status, such as race or gender, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known about the harassing conduct but failed to take any corrective or preventive actions." *Michael v. Caterpillar Financial Services Corp.*, 496 F.3d 584, 600 (6th Cir. 2007) (internal citations omitted). Plaintiff must also establish that her workplace was "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (internal citations omitted).

Plaintiff's Response in Opposition does not address hostile work environment at all.[2]  In her Complaint, Plaintiff alleged that in 2019 a co-worker started a rumor about her "which she believes was motivated by that individual's racial animus toward [Plaintiff]." (Doc. 2, p. 2). However, during her deposition, Plaintiff admitted that the rumor was not related to her race. (Doc.

---

[2] In Plaintiff's Response in Opposition, under the heading for her Hostile Work Environment claim, Plaintiff argued disparate treatment racial discrimination rather than Hostile Work Environment. (Doc. 25, p. 4). As disparate treatment racial discrimination was not pled in the Complaint, it will not be considered. A plaintiff may not amend their complaint through their response in opposition to summary judgment because it would not give defendant sufficient notice and would subject defendant to unfair surprise. *Tucker v. Union of Needletrades, Industrial and Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005).

19-1, p. 18). In addition, Defendant did not fail to act as to this incident. Defendant investigated it, which resulted in discipline of the employee who started the rumor. (Doc. 20-1, p. 2).

Plaintiff also alleged that the October 2020 incident with her female co-worker involved "racial slurs" being directed at Plaintiff. (Doc. 2, p. 2). This is directly contradictory to her deposition in which she was asked about this incident and did not identify any "racial slurs" or race-based comments. (Doc. 19-1, p. 24). Further, following the incident, both Plaintiff and the other employee were immediately sent home for the remainder of the day. (Doc. 20-1, p. 4). The incident was reported to Human Resources, and it was determined that both employees had engaged in unprofessional behavior. (Doc. 20-2, p. 3). Faciana then held discussions with both Plaintiff and the other employee about the incident, counseling them on their failure to adhere to the "Company's Guiding Principle of Respect." (Doc. 20-1, p. 4).

As Plaintiff has not pointed to any evidence that this alleged harassment was based on her race, she has failed to provide evidence supporting all the elements of a hostile work environment claim. Further, Plaintiff, as the non-moving party, may not simply rely on her pleadings but must "produce evidence that results in a conflict of material fact to be resolved by a jury", which she has failed to do. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). In addition, Plaintiff has provided no evidence that her workplace was "permeated with discriminatory intimidation, ridicule or insult sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." *Michael*, *supra*, at 600 (internal citations omitted). Accordingly, Defendant's Motion for Summary Judgment on this claim is GRANTED.

### E.  Plaintiff's Retaliation Claim

In her third cause of action, Plaintiff alleges that Defendant subjected her to retaliation. To establish a prima facie case of retaliation, Plaintiff must show: (1) she engaged in protected activity, (2) her employer knew of the protected activity, (3) the employer took an adverse employment action against her, and (4) the employer did so because of the protected activity. *Ellis v. Shelby County Land Bank Dept.*, 548 Fed.Appx 320, 322 (6th Cir. 2013). If Plaintiff can establish a prima facie case of retaliation, Defendant then must show a legitimate, non-retaliatory reason for her termination. *Mansfield v. City of Murfreesboro*, 706 Fed.Appx. 231, 236 (6th Cir. 2017). If Defendant can meet that burden, it then shifts to Plaintiff to show that reason was a pretext for retaliation. *Id*.

Plaintiff cannot establish that she was engaged in protected activity. In her Complaint, Plaintiff asserts that she engaged in protected activity when she reported the 2019 rumor incident. (Doc. 2). However, when asked during her deposition if she felt the 2019 rumor had to do with her race, Plaintiff answered "No." (Doc. 19-1, p. 18). Accordingly, as the underlying incident was not race-related, Plaintiff cannot demonstrate that any reporting of it was a protected activity.

Plaintiff also alleges in her declaration that she called Krystin Olson with Human Resources at the end of October 2020 and told her that she was being harassed because she was African American. (Doc. 25-1, p. 13). Her declaration does not provide specific facts as to what conduct or harassment she was referring to. Ms. Olson does not mention this call in her declaration attached to the Motion for Summary Judgment, but she does state that, during her investigation into the October 2020 verbal confrontation between Plaintiff and the female coworker, neither party indicated race was a factor. (Doc. 20-2). Further, in her deposition, when asked about the

incident, Plaintiff did not mention any comments made toward her that involved her race. (Doc. 19-1, p. 24).

Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has not pointed to any specific facts to create a genuine issue of material fact regarding whether she engaged in a protected activity. Rather Plaintiff's deposition testimony failed to point to any race-related comments made during the verbal altercation in October 2020 that would lead to Plaintiff calling Ms. Olson about race-related harassment. Further, Defendant has produced a declaration for Ms. Olson who investigated the incident in October 2020 and states that race was never raised during her investigation. (Doc. 20-2).

Assuming arguendo that Plaintiff did engage in a protected activity, she has not and cannot point to any facts that would create a genuine issue of material fact as to whether her employment was terminated because she reported harassment based on her race. Defendant has put forth Faciana's declaration stating that he made the decision to terminate Plaintiff's employment after the incident with Mr. Bramlett because she had been "previously counseled for other safety infractions and disrespectful conduct towards co-workers." (Doc. 20-1, p. 5). In her deposition, Plaintiff recalled being terminated because she was "throwing parts" at Mr. Bramlett and for the verbal altercation with the female employee. (Doc. 19-1, p. 96).

In her Response in Opposition, Plaintiff argues that the only "policy violation" that occurred after she engaged in the protected activity in October 2020 was the February 9th incident with Mr. Bramlett and that Faciana used that as a basis for her termination because he believed the other employee over Plaintiff. (Doc. 25, p. 7). Plaintiff argues that this coupled with the fact that the termination occurred only a few months after the alleged protected activity raises a genuine

issue of material fact that her termination was because she reported racial harassment. (Doc. 25, p. 7).

Plaintiff's disagreement with Faciana's decision to believe Mr. Bramlett's version of events rather than hers does not create a genuine issue of material fact. *See Brown v. Kelsey-Hayes Company*, 814 Fed.Appx. 72, 81 (6th Cir. 2020). Plaintiff fails to point to any facts that would create a genuine issue of material fact that the reasons given for her termination were false. Therefore, Plaintiff has not and cannot demonstrate that the facts meet the elements for a prima facie retaliation claim. Defendant's Motion for Summary Judgment on this claim is GRANTED.[3]

## III.    CONCLUSION

For the reasons stated above, Defendant's Motion to Strike Plaintiff's Declaration is DENIED and Defendant's Motion for Summary Judgment is GRANTED.

Date: May 12, 2023                          */s/ John R. Adams*
                                            JOHN R. ADAMS
                                            UNITED STATES DISTRICT JUDGE

---

[3] In its Motion for Summary Judgment, Defendant also argues that Plaintiff's Complaint is precluded because she failed to disclose her potential claims in her previous Chapter 7 bankruptcy. The Court finds that Plaintiff received her bankruptcy discharge on February 21, 2020 and the case was closed on February 28, 2020. (Bankruptcy Case No. 19-62238). The majority of the facts raised in this case occurred after those dates. Therefore, the Court finds that the Plaintiff's claims would not be precluded based on failing to disclose them in her bankruptcy.